# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| RICHARD G., | No. CV 18-7583-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## I.
## PROCEEDINGS

Plaintiff[1] filed this action on August 30, 2018, seeking review of the Commissioner's[2] denial of his application for Disability Insurance Benefits ("DIB") payment. The parties filed Consents to proceed before a Magistrate Judge on August 30, 2018, and September 21, 2018. Pursuant to

---

[1] In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses plaintiff's (1) first name and last initial, and (2) year of birth in lieu of a complete birth date. See Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul, the newly-appointed Commissioner of the Social Security Administration, is hereby substituted as the defendant herein.

the Court's Order, the parties filed a Joint Submission (alternatively "JS") on May 24, 2019, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Submission under submission without oral argument.

## II.
## BACKGROUND

Plaintiff was born in 1955. [Administrative Record ("AR") at 139.] He has past relevant work experience as a film editor. [AR at 15, 37, 39.]

On July 23, 2015, plaintiff filed an application for a period of disability and DIB, alleging that he has been unable to work since January 1, 2013. [AR at 11; see AR at 139-42.] After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 11, 89-90.] A hearing was held on October 10, 2017, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 11, 31-55.] A vocational expert ("VE") also testified. [AR at 48-53.] On February 7, 2018, the ALJ issued a decision concluding that plaintiff was not under a disability from January 1, 2013, the alleged onset date, through June 30, 2014, the date last insured. [AR at 11-20.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 138.] When the Appeals Council denied plaintiff's request for review on July 17, 2018 [AR at 1-6], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it

is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the

second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity from January 1, 2013, the alleged onset date, through June 30, 2014, his date last insured. [AR at 13.] At step two, the ALJ concluded that through the date last insured, plaintiff had the medically determinable impairments of renal insufficiency, obesity, and obstructive sleep apnea, but that they were not severe. [Id.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of January 1, 2013, through June 30, 2014, the date last insured. [AR at 19.]

# V.

# THE ALJ'S DECISION

Plaintiff contends that: (1) the ALJ's decision does not have the support of substantial evidence; and (2) the ALJ incorrectly assessed the probative medical opinions of treating physicians Ramin Gabbai, M.D., and Reza Khorsan, M.D. [JS at 3-4.] As set forth below, the Court respectfully disagrees with plaintiff and affirms the decision of the ALJ.

## A. THE ALJ'S STEP TWO FINDING

### 1. Legal Standard

At step two of the five-step process, plaintiff has the burden to provide evidence of a medically determinable physical or mental impairment that is severe and that has lasted or can be expected to last for a continuous period of at least twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); see 20 C.F.R. §§ 404.1508 (effective through March 26, 2017), 404.1509, 404.1520(a)(4)(ii); see generally Bowen v. Yuckert, 482 U.S. 137, 148, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (Secretary may deny Social Security disability benefits at step two if claimant does not present evidence of a "medically severe impairment"). This must be "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508 (effective through March 26, 2017). The Commissioner's regulations define "symptoms" as a claimant's own description of his physical or mental impairment. 20 C.F.R. § 404.1528 (effective through March 26, 2017). "Signs," by contrast, "are anatomical, physiological, or psychological abnormalities which can be observed, apart from [the claimant's] statements . . . [,] [and] must be shown by medically acceptable clinical diagnostic techniques." Id. Finally, "[l]aboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques." Id. A claimant's statements about an impairment (i.e., "symptoms") "are not enough [by themselves] to establish that there is a physical or mental impairment." Id.

Step two is "a de minimis screening device [used] to dispose of groundless claims."

Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). A "severe" impairment, or combination of impairments, is defined as one that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520. An impairment or combination of impairments should be found to be "non-severe" only when the evidence establishes merely a slight abnormality that has no more than a minimal effect on an individual's physical or mental ability to do basic work activities. Yuckert, 482 U.S. at 153-54 & n.11 (Social Security claimants must make "de minimis" showing that impairment interferes with ability to engage in basic work activities) (citations omitted); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005); see also 20 C.F.R. § 404.1521(a). "Basic work activities" mean the abilities and aptitudes necessary to do most jobs, including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . ." 20 C.F.R. § 404.1521(b). It also includes mental functions such as the ability to understand, carry out, and remember simple instructions, deal with changes in a routine work setting, use judgment, and respond appropriately to supervisors, coworkers, and usual work situations. See SSR 85-28.

When reviewing an ALJ's findings at step two, the Court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." Webb, 433 F.3d at 687 (citing Yuckert, 841 F.2d at 306 ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.")).

**2. Analysis**

The ALJ found that through plaintiff's date last insured, "[plaintiff] did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, [plaintiff] did not have a severe impairment or combination of impairments." [AR at 13.] She noted that plaintiff "currently suffers from chronic kidney disease and has been on dialysis since 2015," but that "the cumulative medical evidence shows that a chronic disease, with the level of symptoms alleged, was not

established" by the date last insured of June 30, 2014. [AR at 14.]

Plaintiff contends that the April 12, 2018, letter from his treating physician, Dr. Gabbai, submitted to and considered by the Appeals Council after the ALJ had issued her decision, constitutes "new evidence that was not available to the ALJ," and renders the ALJ's decision "not supported by substantial evidence." [JS at 5.] In his letter, Dr. Gabbai stated that he first saw plaintiff on December 6, 2013, when he treated him in the hospital for an acute kidney infection, "which was due to a serious infection and due to obstruction as well [as] infection of [his] left kidney." [AR at 30.] He stated that at the time he was hospitalized, plaintiff was "significantly debilitated." [Id.] Dr. Gabbai further stated "[i]t is likely [that at the time of the hospitalization] [plaintiff] had started developing fibrillary glomerulonephropathy." [Id.] Dr. Gabbai also stated that it is his opinion that "by June 30, 2014, [plaintiff] would have been on a regular and continuous basis, . . . only able to lift and carry ten or more pounds occasionally (up to 1/3 of the workday) or be on his feet less than even two hours in an eight-hour workday." [Id.] Plaintiff asserts that this additional opinion evidence submitted by Dr. Gabbai directly addresses the ALJ's concern as expressed in her decision that Dr. Gabbai's "functional assessment does not describe [plaintiff's] status before June 30, 2014."[3] [JS at 6 (citing AR at 18).]

Defendant responds that the ALJ properly found that plaintiff's alleged impairments and limitations "could not be substantiated or linked to any *contemporaneously* reported symptom evidence found in the record, prior to June 30, 2014." [JS at 8-9; AR at 15-18 (emphasis added).] Defendant asserts that "[p]laintiff relies on statements made by his treatment providers, obtained years after his date last insured," and that he did not report his alleged symptoms and limitations to his treating providers until "well after his date last insured." [JS at 8, 9.]

The Court finds that plaintiff has not rebutted the ALJ's determination that plaintiff did not

---

[3] In addition to the April 12, 2018, letter, on September 25, 2015, Dr. Gabbai completed a Physical Residual Functional Capacity Questionnaire ("Questionnaire") describing plaintiff's condition and its effect on his ability to work. [AR at 985-92.] The ALJ gave little weight to the Dr. Gabbai's opinions of plaintiff's functional capacity because those opinions did not correlate with the contemporaneous evidence through June 30, 2014, and, therefore, did not describe plaintiff's status during the relevant time period. [AR at 17-18.] The ALJ's assessment of Dr. Gabbai's September 25, 2015, is discussed in more detail with respect to plaintiff's second issue.

have a severe impairment prior to his date last insured. While plaintiff contends that Dr. Gabbai's April 12, 2018, letter constitutes an additional opinion that directly addresses the ALJ's expressed concern that Dr. Gabbai's September 25, 2015, functional assessment did not describe plaintiff's status before June 30, 2014, for the reasons discussed below with regard to plaintiff's second issue, Dr. Gabbai's letter did not provide substantially *new* information that the ALJ did not have at the time of her decision.[4] [JS at 6 (citing AR at 18).] As noted by the ALJ, despite plaintiff's claim that his onset date was January 1, 2013, plaintiff provided no medical records prior to *July* 2013 to support his testimony of disabling chills and fatigue with a disability commencement date of January 1, 2013. [AR at 16, 40-45, 240-41.] Additionally, based on the Court's review of plaintiff's medical records from the period before June 30, 2014, and through his date last insured, those records simply do not reflect the severity of the symptoms and limitations that plaintiff now claims existed during that period of time. [See, e.g., AR at 237-42, 249-50, 259-61, 267, 270-75, 296-303, 489-515, 554-66, 705-42, 969-84, 1059-81.] In fact, from July 2013 through June 30, 2014, plaintiff's medical records only provide one instance -- on December 5, 2013 -- where plaintiff mentioned "feeling weak and tired" -- a day before he had surgery for kidney stones. [AR at 497-99, 709.] In the period following this procedure through plaintiff's date last insured, the record reflects that plaintiff's kidney function improved and plaintiff made no new or continuing mention of the debilitating symptoms he now alleges. [AR at 296-305.] In fact, it was not until a medical visit on June 14, 2015, almost a full year after plaintiff's date last insured, that the record reflects that plaintiff told his care provider that he had "become bedridden." [AR at 542.]

Based on the foregoing, the Court determines that the ALJ's finding that the record does not reflect a severe impairment prior to plaintiff's date last insured is supported by substantial evidence, and Dr. Gabbai's 2018 letter did not provide evidence that was not already in the record at the time of the ALJ's decision. Remand is not warranted on this issue.

---

[4] In the decision, the ALJ reviewed and discussed both Dr. Gabbai's September 25, 2015, Questionnaire as well as the October 22, 2015, letter from another of plaintiff's treating physicians, Dr. Khorsan, both of which are discussed below in connection with plaintiff's second issue. The ALJ found that Dr. Khorsan's letter -- *which also opines that plaintiff was disabled prior to his date last insured* -- suffers from the same deficiencies as Dr. Gabbai's opinions.

B.  **MEDICAL OPINIONS**

   1.   Legal Standard

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.[5] The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)) (second alteration in original). Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison, 759 F.3d at 1012 (citing Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010)).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d at 1198). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. (citing Ryan, 528 F.3d at 1198). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).

---

[5] The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R. § 404.1520c (not § 404.1527) shall apply. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. See 20 C.F.R. § 404.1520c; see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016). However, the claim in the present case was filed before March 27, 2017, and the Court therefore analyzed plaintiff's claim pursuant to the treating source rule set out herein. See also 20 C.F.R. § 404.1527 (the evaluation of opinion evidence for claims filed prior to March 27, 2017).

The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations).

### 2. The Opinions of Treating Physicians Dr. Gabbai and Dr. Khorsan

Dr. Gabbai, plaintiff's treating physician and nephrologist, began treating plaintiff on December 6, 2013, in connection with his hospitalization for an acute kidney injury, which was due to an infection and kidney stones. [AR at 30; see AR at 985-92, 1026-53.] Although the day prior to his surgery plaintiff complained of feeling weak and tired [AR at 709], it was not until November 25, 2014, that plaintiff reported "increasing fatigue," among other things, to Jonathan Wiebe, M.D. [AR at 305.] Plaintiff was referred to Dr. Khorsan, who then treated plaintiff from December 4, 2014, through spring 2015. [AR at 18, 1214.] On December 3, 2014, plaintiff reported that "he ha[d] been complaining over the past several months of having worsening dyspnea on exertion, can barely go up one flight of stairs, some orthopnea and increasing peripheral edema." [AR at 310.] At this visit, plaintiff denied the existence of abdominal pain, cough, fever, or chills. [AR at 311.] Plaintiff had a kidney biopsy on December 29, 2014, and was diagnosed with fibrillary glomerulonephropathy by Dr. Khorsan. [AR at 1004-05, 1214.]

On September 25, 2015, Dr. Gabbai completed the above-mentioned physical RFC Questionnaire on plaintiff's behalf. [AR 985-90.] In that Questionnaire, he opined that plaintiff could stand for ten minutes in an eight-hour work day; could sit for three hours in an eight-hour work day; could only walk twenty steps without needing to stop; could occasionally lift five pounds;

was too weak to travel alone; and that the disability was not likely to change. [Id.] Dr. Gabbai stated that his opinions were based on his weekly visits with plaintiff and plaintiff's blood tests. [AR at 985.]

On October 22, 2015, Dr. Khorsan, plaintiff's treating physician from December 4, 2014, through the spring of 2015, submitted a letter to the "Social Security Claims Examiner" on plaintiff's behalf. [AR at 1214-15.] In his letter, Dr. Khorsan noted that plaintiff presented to him in December 2014 with symptoms of fluid retention, massive weight gain, and difficulty breathing, and stated that plaintiff's symptoms had started 18 months earlier and continued to advance. [AR at 1214.] He remarked that in December 2013, plaintiff was "noted to have worsening kidney function . . . but at that time it was thought to be d[ue] to kidney stones." [Id.] He continued: "As it turns out, it was not due to kidney stones, but to a rare condition call[ed] fibrillary glomerulonephritis," which Dr. Khorsan diagnosed through a biopsy in December 2014. [Id.] He concluded that, in his opinion, when plaintiff "saw a physician in December of 2013 complaining about exhaustion and inability to get out of bed, he was already suffering from the kidney disease," and that his "disease progressed leaving him now with end stage kidney disease on dialysis." [Id.]

Finally, on April 12, 2018, after the ALJ's decision, and apparently in response to the ALJ's decision discounting Dr. Gabbai's opinions as reflected in the September 25, 2015, Questionnaire, plaintiff submitted the letter from Dr. Gabbai to the Appeals Council, discussed above. [AR at 30.] In that letter, Dr. Gabbai remarked:

> [B]y June 30, 2014, [plaintiff] would have been on a regular and continuous basis, been [sic] only able to lift and carry ten or more pounds occasionally (up to 1/3 of the workday) or be on his feet less than even two hours in an eight-hour workday. Any job would have had to accommodate his need to take unscheduled rest breaks to lie down as well.

[Id.]

### 3. The ALJ's Decision

The ALJ gave little weight to the opinion of Dr. Gabbai as set forth in the Questionnaire because "this does not correlate with the contemporaneous evidence through June 30, 2014." [AR

at 17.] She noted that "[Dr. Gabbai] indicates that [plaintiff] has chronic kidney disease and is on hemodialysis, relates symptoms of fatigue, dizziness, nausea, etc., and essentially precludes him from sustaining any work activity. [T]his functional assessment does not describe [plaintiff's] status before June 30, 2014." [AR at 18.]

For much the same reasons, the ALJ also gave little weight to the October 22, 2015, opinion of Dr. Khorsan. [AR at 18.] The ALJ noted that Dr. Khorsan, who did not see plaintiff until December 2014, "relied on [plaintiff's] after-the-fact statements to him (at least in terms of severity) that these symptoms had started 18 months prior (and continued to advance)." [Id.] The ALJ further noted that she did not find "any specific subjective evidence of exhaustion reported in December 2013 . . . [and] . . . minimal contemporaneous recorded evidence in this regard, notwithstanding multiple medical entries through and subsequent to June 2014, in contrast to mention of same in June 2015." [Id.]

Instead, the ALJ gave "great weight" to the opinions of the state agency physicians who "reviewed all of the medical records through the date last insured" and "determin[ed] that [plaintiff] did not have a severe impairment by June 30, 2014." [AR at 18.] The ALJ also examined plaintiff's records after his date last insured and noted that the evidence in 2015 reflecting acute symptoms and stage 5 chronic kidney disease consistent with Listing level severity, "contrasts with the pre-existing evidence and does not relate back to June 30, 2014, or earlier." [AR at 17.] Moreover, the ALJ noted that Dr. Gabbai's September 2015 report, which reflected that plaintiff was "then on hemodialysis, has fatigue, dizziness, poor functional state, infections, nausea, and dry heaves," also did not "correlate with the contemporaneous evidence through June 30, 2014." [Id.]

The ALJ also made it clear that "the crucial issue assessment relates to [plaintiff's] functional capacity":

> Regardless of whether Fibrillary GN was present by June 30, 2014, of any effects from kidney stones or obesity; and of the lab results by June 30, 2014; we essentially find no contemporaneous complaints of fatigue/exhaustion/lack of energy. [He] related concerns about obesity in February 2014, but did not relate these symptoms, even though he was establishing care with a new facility. More generally, I find it highly significant that there is little mention of these symptoms from any cause. Additionally, with few exceptions, we find specific denials of -- or

> no mention of -- chills, as well as shortness of breath, chest pain, or other symptoms, save for complaints of intermittent abdominal pain. This evidence -- or lack thereof -- seems to counter [plaintiff's] assertions of daily exhaustion and chills and of significant shortness of breath.

[Id.]

### 4. Analysis

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons based on the substantial evidence of record for discounting the opinions of Dr. Gabbai and Dr. Khorsan. [AR at 15.] He notes that the ALJ rejected the opinions of both of these physicians because they were not consistent with the objective medical evidence through June 30, 2014, and/or did not describe plaintiff's status before June 30, 2014. [JS at 15-17.] He also suggests that "contrary to the ALJ's opinion that the records do not contain subjective evidence [of plaintiff's allegations] in December, 2013, the ALJ is wrong," because on December 5, 2013, plaintiff reported feeling weak and tired. [AR at 17 (citing AR at 709).] Plaintiff contends that as a treating physician, Dr. Gabbai's opinion should be "at a hierarchy of medical opinions in the record because he treated [plaintiff] prior to the date last insured and during the entire adjudication period." [JS at 6.]

After reviewing the records, the Court finds that while Dr. Gabbai's and Dr. Khorsan's opinions may be consistent with plaintiff's pre-June 30, 2014, symptoms as reported by him during the hearing, the ALJ did not commit error in her determination that the medical records simply do not reflect these same symptoms prior to that date. [See, e.g., AR at 237-42, 249-50, 259-61, 267, 270-75, 296-303, 489-515, 554-66, 705-42, 969-84, 1059-81.] As the ALJ found, from the alleged onset date through the date last insured, there is little to no documentation to support plaintiff's complaints of disabling fatigue, loss of energy, immobility, or bedridden status. [Id.] As the ALJ stated in her decision, "[o]ne would expect to see significant reporting of these symptoms if they had been as problematic as the [plaintiff] now contends in retrospect." [AR at 16.] Moreover, as discussed above, the one record prior to June 2014 that reflects plaintiff's complaint that he was feeling weak and tired was in a record dated one day prior to his surgery for kidney stones. [AR at 497-99, 709.] After that, there is nothing in the record until plaintiff's complaint of

"increasing fatigue" to Dr. Wiebe on November 25, 2014, well after his date last insured.

Based on the foregoing, the ALJ provided specific and legitimate reasons for rejecting the opinions of Dr. Gabbai and Dr. Khorsan and giving greater weight to the state agency reviewing physicians. Remand is not warranted on this issue.

## VI.

## ORDER

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **denied**; and (2) the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: August 5, 2019

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE